UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | |
| v. | Case No. 19-336-01-DGK |
| ELIJAH KLOTZ, | |
| Defendant. | |

## SENTENCING MEMORANDUM

COMES NOW the defendant, Elijah Klotz, by and through his attorney, David J. Guastello, and respectfully moves this Court to consider a non-guideline sentence in this case based on the sentencing criteria established at 18 U.S.C. §3553.

**I.      Introduction**

In imposing any sentence, 18 U.S.C. §3553 generally directs that the Court shall impose a sentence sufficient but not greater than necessary. Among the factors for the Court to consider are the nature and circumstances of the offense, the history and characteristics of the defendant, the need to reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant. (*See* 18 U.S.C. §3553(a))

The advisory sentencing guidelines are an additional factor for the Court to consider but a district court may not begin with the presumption that those guidelines are reasonable. *United States v. Alvizo-Trujillo*, 521 F.3d 1015, 1018-1019 (8th Cir. 2008)(citing *United States v. Gall*, 128 S.Ct. 586, 596-597 (2007) and *United States v. Rita*, 127 S.Ct. 2456 (2007)).

## II. Background and Sentencing Guidelines

Mr. Klotz entered a guilty plea to one count of conspiracy to distribute 100 grams of heroin and 50 grams or more of methamphetamine mixture in violation of 21 U.S.C. §841(a)(1), (b)(1)(B) and possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. §924(c). The final PSR calculates his applicable offense level for count 1 as follows:

| | |
|---|---|
| Base Offense Level: (33,892.13 KG converted weight)  (USSG §2D1.1(c)(2) | 36 |
| Acceptance of Responsibility (USSG §3E1.1) | -3 |
| Total Offense Level | 33 |

Mr. Klotz has a total of six (6) criminal history points placing him in Criminal History Category IV. The PSR calculates the applicable suggested guidelines range at 188 to 235 months. Mr. Klotz also entered a guilty plea to count 2 to a violation of 18 U.S.C. 924(c) which carries a five year mandatory consecutive sentence. As accurately reflected in the addendum to the PSR, Mr. Klotz has lodged an objection to a portion of the drug quantity attributed to him in the PSR. Counsel plans to address these objections at sentencing. Notwithstanding those objections to the PSR, due to the mandatory consecutive sentence associated with count 2, Mr. Klotz's guidelines as currently calculated in the PSR are 248 to 295 months.

## III. History and Characteristics of Elijah Klotz

Mr. Klotz is a 24 year old man. Although he has incurred previous convictions, he has only two prior felony convictions. Specifically, Mr. Klotz was charged in Johnson County Kansas with felony theft in August 2018. (PSR ¶44) Mr. Klotz was released on bond in that

matter with a condition of electronic monitoring. While on bond for the felony theft charge, Mr. Klotz removed the electronic monitoring device which was the basis for the unlawful tampering conviction. Ultimately, Mr. Klotz received probation on both Johnson County, Kansas matters. The remaining convictions on Mr. Klotz's record are all misdemeanors.

The lengthiest sentence that Mr. Klotz has served is for a 2016 misdemeanor marijuana and paraphernalia probation revocation where he served 90 days of custody. (PSR ¶41) This is a significant factor in determining the sentence here. Mr. Klotz has never been sentenced anywhere near the current guidelines in this matter. Additionally, given Mr. Klotz's relative young age, a guideline sentence would in essence create a situation where at the time of the expiration of his sentence, he would almost have spent as much time in prison as he has outside of prison.

Mr. Klotz did not enjoy the benefit of having a stable home for most of his life. He was primarily raised by his grandparents from birth to age 13. According to Gail Klotz, Mr. Klotz's mother, Elijah was raised by his grandma because she and Elijah's dad "had a break down" and were "unable to raise him or support him." Between the ages of 13 and 16, Mr. Klotz bounced around living with various friends and family. Between the ages of 16 and 18 he had a more consistent living arrangement when he lived with his paternal aunt, Shelly Stegmaier. After reaching the age of majority, Mr. Klotz continued to lack permanent residence and lived with various friends and relatives on a short term basis.

Given his unstable living situation, perhaps it should come as little surprise that Mr. Klotz was first introduced to drugs and alcohol at an early age. He first used marijuana at age 9. His first experience with alcohol was at age 13. At the age of 15 he was taken to the hospital from school for alcohol poisoning. By the age of 17 he was a daily user of heroin.

Shortly thereafter he first began using methamphetamine.

The offense conduct contained in the PSR, the majority of which is historical in nature, encompasses the time period of March 2019 to October of 2019. In this seven month period of time, Mr. Klotz came in contact with large amounts of drugs. It is apparent that Mr. Klotz lacked the proper upbringing, maturity and sobriety to recognize the damage that his actions cause to himself and others. Mr. Klotz has been in custody on this matter for approximately 29 months which is already by far the most amount of time he has ever spent in custody. The sad reality is that his time in custody has afforded him the most stable living environment of his relatively short life. It has also afforded him with his largest stretch of sobriety as an adult. It should also be pointed out that almost all of his time in custody has been during the COVID-19 pandemic. Mr. Klotz contracted COVID-19 while in custody at Laffeyette County Jail as did a significant portion of the population of inmates housed there. The pandemic not only created exceptional health concerns for incarcerated individuals, it also prevented any ability to have in person visits with family. Mr. Klotz's father passed away between the writing of the PSR and the submission of this memorandum. While Mr. Klotz was able to stay in contact with his father by telephone during his time in custody, he was not able to see him prior to his passing. Mr. Klotz was also unable to attend his father's funeral given his custody status.

During this exceptionally difficult time in custody Mr. Klotz has reflected upon his past actions as well as his future. In many ways his relationship with his family is stronger today that it has been previously as reflected in the letters of support submitted herein. Mr. Klotz wants to pursue training in carpentry so that he may be in a position to obtain employment upon his release. He recognizes the challenges that he will continue to face with addiction. However, as provided in the letters from his family, he will continue to receive the support of

his family now and after his release.

### IV. Seriousness of the Offense, Promote Respect for the Law, Deterrence, Protection of the Public and Rehabilitation

Mr. Klotz recognizes and understands that he stands convicted of serious crimes. The offense conduct is severe in nature and nothing herein is offered to suggest otherwise. The charges of conviction carry a combined mandatory sentence of 120 months. Mr. Klotz however respectfully suggested that the punitive purposes of sentencing can be achieved with a below guideline sentence. Excessively lengthy sentences of incarceration do not provide deterrence. There is "little empirical evidence that increases in the length of already long prison sentences yield general deterrent effects that are sufficiently large to justify their social and economic costs." *United States v. Valdovinos*, 760 F.3d 322 (4th Cir. 2014) (citing Daniel S. Nagin, Deterrence in the Twenty-First Century, 42 Crime and Justice 199, 201 (M. Tonry, ed. 2013)) (Davis, J., dissenting.) Instead, deterrence is promoted by the "certainty of apprehension," rather than "the ensuing legal consequences." Nagin at 1 (abstract).

A below guideline sentence would also adequately protect the public. Even if the court were to impose a mandatory minimum sentence of 120 months, this would represent a sentence 40 times greater than the lengthiest sentence he has previously served. Additionally, Mr. Klotz will be subject to a substantial period of post-imprisonment supervised release that would further provide protection to the public.

Finally, it is noteworthy that while he has participated in inpatient and outpatient substance abuse treatment programs as a teenager, Mr. Klotz believes he could benefit from additional drug treatment. Mr. Klotz would request that he be allowed to take advantage of the Bureau of Prison's 500 hour drug abuse program. Mr. Klotz would also respectfully request the recommendation of the Court that he designate to Pollock or FCI Florence to allow him to

take advantage of not only the RDAP program but also the UNICOR programs that are provided at those facilities.

## V. Conclusion

For the above detailed reasons, Mr. Klotz respectfully suggests that a below guideline sentence is more than sufficient to serve the purposes of sentencing.

WHEREFORE, the defendant Elijah Klotz respectfully requests this Court impose a below guideline sentence.

Respectfully submitted,

s/ *David J. Guastello*

DAVID J. GUASTELLO  MO#57924
811 Grand Blvd.
Suite 101
Kansas City, MO 64106
Tele:   (816) 753-7171
david@guastellolaw.com

<u>Certificate of Service</u>

  I hereby certify that on the 7th day of April, 2022, the foregoing was electronically filed with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all counsel.

                s/ *David J. Guastello*